Argued at Pendleton May 5; reversed May 20, 1941

## OLIVER ET UX. *v.* JOHNSON

(113 P. (2d) 430)

476

Before KELLY, Chief Justice, and BAILEY, LUSK and
RAND, Associate Justices.

*J. F. Kilkenny,* of Pendleton (Raley, Kilkenny &
Raley, of Pendleton, on the brief), for appellant.

*E. M. Sabin,* of Union, for respondents.

BAILEY, J. This suit was instituted by J. R. Oliver
and his wife to enjoin the defendant, D. L. Johnson,
from interfering with their use of a road over and
across the defendant's land, for hauling logs and cord-
wood from a tract of land sold by the plaintiffs to the
defendant. From a decree in favor of the plaintiffs
the defendant appeals.

On October 8, 1929, the plaintiffs sold and conveyed
to the defendant the east half and the east half of the
west half of section 10, township 5 south, range 38
east, W. M. in Union county, Oregon. The deed con-
tained the following provision:

"The grantors herein reserve all timber on said
lands with the right to go thereon and cut and remove
any and all timber for a period of 20 years and may sell
the timber to any person they may choose to sell it and
shall also have the right to build roads for the purpose
of removing the said timber on the said lands."

It is contended by the plaintiffs that they and their vendees of the timber on the tract of land above described have the right to use a road between five and six miles in length, hereinafter more particularly described, for the purpose of going upon the land conveyed by them and removing therefrom the timber.

The road in question begins at a gate opening on the county road in the southwest quarter of section 14, township 4 south, range 38 east, and proceeds in a southwesterly direction across section 22 to the northeast corner of section 28, thence in a southeasterly direction through section 27 to section 35, all in township 4 south, thence southerly through section 35, passing into the west half of section 2, township 5 south, and thence southwesterly through the southeast quarter of section 3, over lands owned by the United States in that section, to the land sold by the plaintiffs to the defendant.

This road for a distance of approximately two miles southward from the gate mentioned was in existence as early as 1905 and thereafter was gradually lengthened by L. B. Menefee Lumber Company until it reached the plaintiffs' land, about 1928. It was used for hauling logs and lumber, serving a sawmill that was built prior to 1905 in section 28 of township 4 south, about two miles south of the gate on the county road. The road was extended to land owned by the plaintiffs in order to enable the lumber company to haul logs from that land and adjoining property to the sawmill.

In October, 1928, a year prior to the defendant's purchasing from the plaintiffs the land herein mentioned, the lumber company deeded to the defendant the lands owned by it through which the road passed, reserving for a period of five years the right to cut

and remove the remaining timber on the land so conveyed, and the further right to use the road for hauling logs and lumber. The lumber company ceased logging in 1929 or 1930 and in April, 1930, quitclaimed to the defendant all the rights it had theretofore reserved in the timber and the use of the road. The remaining land in private ownership through which the road passed was conveyed to the defendant by La Grande National Bank in May, 1929.

The road from the gate southward to the sawmill goes along the bottom of a canyon, the entire width of which at many points is taken up by the road and a stream. Along the canyon are two corrals used by the defendant for his sheep, through which enclosures the road passes. There is much testimony in the record, introduced by the defendant, to the effect that the use of this road disturbs the sheep in the corrals.

The gate above mentioned has been in place for many years and has been kept locked most of the time since 1928. In addition, a warning against trespassing has been posted on or near it permanently, dating from more than ten years prior to the institution of this suit.

The plaintiffs' witnesses estimated the amount of wood on the property sold to the defendant by the plaintiffs at from 10,000 to 24,000 cords. The nearest available markets for such wood are at La Grande and Union. The distance from this tract either to La Grande or Union by way of the road over the defendant's property is between twenty and twenty-five miles, mostly down grade.

There is another roadway from the land on which the plaintiffs' timber stands, in existence at the time the tract was conveyed to the defendant, leading in a southerly direction some seven or eight miles to North

Powder, which road has been used for hauling forest products in the past. The tract conveyed by the plaintiffs slopes down to the north, and in order to remove the cordwood therefrom by way of the North Powder road it would be necessary to haul it up-hill for some distance to reach that road. It would also be necessary to make some improvements in the North Powder road. The record does not clearly show whether this is a public or private way. By this route the haul from the plaintiffs' timber to Union would be approximately twenty-two miles, and to La Grande, some fifteen miles more. It would be more convenient and less expensive for the plaintiffs and their vendees of the timber to haul the wood to Union and La Grande over the road through the defendant's property.

■ The plaintiffs, prior to conveying to the defendant the tract of land owned by them in section 10, had no right to use the road here involved, as a means of ingress to or egress from that tract. The road is all on property owned by the defendant except an aggregate of about one-half mile thereof in section 27, township 4 south, and section 3, township 5 south, which is on government land. It was not laid out or dedicated as a public way. Nor has there been such use of it by the public as to establish it as a public highway. The road was built and for many years maintained as a private way by L. B. Menefee Lumber Company for use in its logging operations. Since acquiring ownership of the lands over which the road passes the defendant has kept the road improved for his own use in connection with sheep-raising, and has expended about $2,000 in maintaining it. No right to use the road was at any time granted to the plaintiffs by the owners of the road, and they did not acquire any such right by adverse

use. The road had not been extended to their tract until a year or so prior to the date of their conveyance to the defendant. There was never a unity of ownership of the plaintiffs' tract and the lands of the defendant prior to the plaintiffs' conveyance to him. Therefore, the plaintiffs did not, while owning their tract of land, have a way of necessity over the lands of the defendant: 19 C. J., Easements, § 114, page 921; 17 Am. Jur., Easements, § 49, page 963.

■■ The only remaining question is whether the plaintiffs acquired by the reservation in their deed, as above quoted, a right to the use of the road over and across the defendant's land which they did not theretofore have. A reservation that is doubtful or ambiguous is to be construed most strongly against the grantor and in favor of the grantee: 18 C. J., Deeds, § 347, page 345; 17 Am. Jur., Easements, § 97, page 995; 19 C. J., Easements, § 97, page 911; 38 C. J., Logs and Logging, § 21, page 149. The wording of the reservation with which we are here concerned does not appear doubtful or ambiguous. The grantors reserve the timber on the land conveyed. They also reserve the right to go "thereon", with apparent reference to the premises conveyed. And they further reserve the right to build roads for the purpose of removing the timber they may cut. No other land is mentioned in the reservation or elsewhere in their deed to the defendant, and it is apparent that the right to build roads has reference only to the land described in the deed.

■■ A reservation in a deed is defined as the carving of a new estate out of that granted: *Ruhnke v. Aubert*, 58 Or. 6, 113 P. 38; *Beck v. Lane County*, 141 Or. 580, 18 P. (2d) 594. It is also described as the creation in behalf of the grantor of a new right issuing out of the

thing granted, ''something which did not exist as an independent right before the grant'': 16 Am. Jur., Deeds, § 298, page 607; 1 Thompson on Real Property, Perm. Ed., § 360, page 584; *Johnson v. Peck*, 90 Utah 544, 63 P. (2d) 251. It is ''something taken back out of that which is clearly granted'': *Beardslee v. New Berlin Light & Power Co.*, 207 N. Y. 34, 100 N. E. 434, Ann. Cas. 1914B, 1287. Inasmuch as the plaintiffs had no existing right to the use of the defendant's road, they did not, through the reservation in their deed, create any such right to be exercised in connection with the removal of the timber.

It follows that the decree appealed from is reversed and the suit dismissed. Costs and disbursements will not be allowed in this court.